UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DHUNDUP GYALTSEN,

                    Petitioner,

      v.

RAUL MALDONADO, *et al.*,

                    Respondents.

**MEMORANDUM DECISION AND ORDER**

26-cv-3314 (BMC)

**COGAN**, District Judge.

Petitioner, a native and citizen of China with a passport issued by India, seeks habeas relief under 28 U.S.C. § 2241. Rather than asking for immediate release, petitioner seeks a bond hearing, at which respondents must justify his ongoing detention by clear and convincing evidence. For the reasons below, the petition is granted.

## BACKGROUND

In 2015, petitioner arrived in Florida as an alien crewman aboard a cruise liner. He was granted a temporary landing permit that required him to leave within 29 days of entry.[1] Petitioner never left the country, and he has since applied for asylum. During a prescheduled asylum interview in 2025, he was arrested and remains detained today.

Respondents assert, and petitioner does not deny, that petitioner's detention is authorized by 8 U.S.C. § 1282(b), which permits "any immigration officer [to], in his discretion . . . take [an overstaying] crewman into custody" pursuant to "regulations prescribed by the Attorney General." The regulations relevant here are 8 C.F.R. § 208 *et seq.* and § 252 *et seq.*

---

[1] A temporary landing permit is colloquially referred to as a "D-1 Visa" because it is authorized for aliens described in subsection (D)(i) of the statute. See 8 U.S.C. § 1101(a)(15)(D)(i) ("The term 'immigrant' means every alien except an . . . an alien crewman serving in good faith as such in a capacity required for normal operation and service on board a vessel . . .").

"A crewman who was granted landing privileges [and] has not departed [] on the vessel of arrival . . . shall be removed from the United States without a hearing." Id. § 252.2(b). The exception is a crewman who files for asylum, such as petitioner. See id. § 208.2(c)(1). Such crewmen are placed in so-called "asylum-only" proceedings, at which the immigration courts are

> limited to a determination of whether the alien is eligible for asylum . . . and whether asylum shall be granted in the exercise of discretion . . . During such proceedings, all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief.

Id. § 208.2(c)(3)(i). Thus, when petitioner sought to be released on bond, the immigration court denied relief, finding it had "no[] jurisdiction to conduct a bond hearing or redetermine custody conditions for those in asylum-only proceedings."

Petitioner contends that, notwithstanding the above, he is entitled to a burden-shifted bond hearing because the duration of his detention has become unreasonable. Respondents counter that (1) the duration of petitioner's detention is not unreasonable and (2) even if it is unreasonable, he cannot be released on bond.

## DISCUSSION

### I.    Legal Standard

Habeas corpus "stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91 (2011); see also Öztürk v. Hyde, 136 F.4th 382, 393 (2d Cir. 2025). The Court may issue a writ under Section 2241 "whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their

2

detention." Lopez v. Sessions, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing Demore v. Kim, 538 U.S. 510, 516-17 (2003)).

## II.   Analysis

This petition presents two issues: (1) whether the duration of petitioner's detention has become unreasonable, and if so, (2) whether petitioner is eligible to be released on bond, notwithstanding 8 C.F.R. § 208.2(c)(3)(i).

### A.   Detention

In Zadvydas v. Davis, 533 U.S. 678, 682 (2001), the Supreme Court held that, because "indefinite detention of aliens [already ordered removed] would raise serious constitutional concerns, [detention under 8 U.S.C. § 1231] contain[s] an implicit [six-month] 'reasonable time' limitation, the application of which is subject to federal court review." In Black v. Decker, 103 F.4th 133, 138 (2d Cir. 2024), the Second Circuit extended Zadvydas to the detention of aliens who had not yet been ordered removed, holding that an alien's "right to due process precludes his unreasonably prolonged detention under [8 U.S.C. §] 1226(c) without a bond hearing."

Respondents argue (1) that Black does not apply to petitioner, and (2) even if Black applies, petitioner's detention is not unreasonable. The Court disagrees.

#### i.   Applicability

Respondents first argue that Black simply does not apply to petitioner because Black concerned aliens detained under § 1226(c), whereas petitioner is detained under § 1282(b). That distinction is immaterial. In Black, the question was whether due process entitled an alien to a bond hearing even though the statute authorizing the alien's detention (§ 1226(c)) did not contemplate release on bond. That's the exact question that we have here: does due process

3

entitle petitioner to a bond hearing even though the statute authorizing his detention (§ 1282(b)) does not contemplate release on bond?

The only relevant distinction that can be made between the aliens in Black and the petitioner here is that the former were criminals and the latter is not. That distinction does not compel a different result. The Court agrees with petitioner that, "from a common-sense perspective, if the due process principles articulated in Black apply to 'criminal aliens' who Congress commanded 'shall' be detained, see 8 U.S.C. § 1226(c), then the same principles logically apply to *non*-criminal detainees where there is no . . . 'mandatory' command of detention," such as petitioner. Accordingly, Black applies.

        ii.        Petitioner's Detention

It is undisputed that petitioner has been detained for about a year, *i.e.*, beyond "the six-month, presumptively reasonable duration of detention." Mathieu v. Dep't of Homeland Sec., 26-cv-4630, 2026 WL 1747084, at *4 (S.D.N.Y. June 17, 2026) (citing Zadvydas, 533 U.S. at 701). Thus, under Black, petitioner's detention has become "presumptively unreasonable." Raju Ahmed v. Maldonado, No. 26-cv-3656, 2026 WL 2042849, at *4 (E.D.N.Y. July 15, 2026).

Respondents attempt to rebut that presumption by casting petitioner's ongoing detention as self-inflicted, *i.e.*, that he remains detained only because he chose to appeal his removal order. There is some intuitive appeal to respondents' position, and there is at least one case from the Second Circuit that supports that principle.

In Doherty v. Thornburgh, 943 F.2d 204, 211 (2d Cir. 1991), the Second Circuit found no constitutional violation where an alien, already convicted of murder by the United Kingdom, was detained without bond for eight years pending deportation or extradition, owing almost exclusively to his own litigation conduct:

4

> An examination of the causes of the length of this litigation and, consequently, of Doherty's detention, supports our conclusion.  Over the course of the last eight years, Doherty has exercised skillfully his rights under the deportation statute, delaying and perhaps preventing the outcome sought by the government.  He has resisted deportation when it would result in his return to Great Britain, agreed to deportation when it would not result in his return, and then resumed his resistance to deportation when circumstances changed.  Only in the face of the impending elimination of [an applicable] exception did Doherty seek to expedite the deportation process and, when it appeared that his destination of choice no longer offered a haven from extradition, he sought relief from deportation, once again slowing down the process.  Although this litigation strategy is perfectly permissible, we hold that Doherty may not rely on the extra time resulting therefrom to claim that his prolonged detention violates substantive due process.

But Doherty was a narrow decision limited to the unique aspects of that case: despite the petitioner's "perfectly permissible" litigation conduct, it was beyond obvious that his intention behind that conduct was delaying his deportation or extradition by any means necessary.  Id. at 205, 211.

In other words, Doherty does not broadly stand for the proposition that *any* delay attributable to an alien-petitioner's litigation conduct cannot militate against the constitutionality of the alien's detention.  Rather, Doherty is a cautionary tale about self-inflicted delay for the mere sake of delay.  Id. at 211 ("Were Doherty's lengthy detention largely the result of a government strategy intended to delay, we might find a due process violation.").

To be sure, Doherty does not govern this case, the Court need only look as far as Black, where the Second Circuit held that the duration of an alien's bondless detention violated due process at the six-month mark, Black, 103 F.4th at 150, even though the petitioners "were long-ago adjudicated to be removable, and their detentions continued only because of the normal consideration of an alien's appeal of adverse decisions," Black v. Almodovar, 156 F.4th 171, 186 (2d Cir. 2025) (Menashi, J., dissenting from denial of reh'g *en banc*).

5

The Circuit's ruling in <u>Black</u>, notwithstanding <u>Doherty</u>, confirms that even when an alien's detention is prolonged beyond the presumptively reasonable duration only by the alien's appeal, such detention is still presumptively unreasonable.  Respondents have failed to rebut that presumption here, and thus petitioner's bondless detention has been unreasonably prolonged.

**B.     Bond**

"If a district court concludes detention has been unreasonably prolonged, it may 'order a new bond hearing at which the Government will be called upon to justify continued detention.'" <u>Mahdawi v. Trump</u>, No. 25-1113, _ F.4th _, 2026 WL 2090981, at *12 n.15 (2d Cir. July 21, 2026) (alterations adopted) (quoting <u>Velasco Lopez v. Decker</u>, 978 F.3d 842, 855 (2d Cir. 2020)).  Respondents contend that nonetheless, petitioner cannot be released on bond because the custody conditions of an alien in asylum-only proceedings are unreviewable by an immigration court under 8 C.F.R. § 208.2(c)(3)(i).  That's wrong.

As the Second Circuit very recently reaffirmed, a detained alien can always seek release on bond in "an administrative hearing pursuant to <u>Matter of Joseph</u>, 22 I. & N. Dec. 799 (B.I.A. 1999)":

> As the Supreme Court has recognized, a detained alien in a <u>Joseph</u> hearing is "entitled to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category." <u>Demore</u>, 538 U.S. at 514; <u>see also</u> 8 C.F.R. § 1003.19(h)(2)(ii) (2026).  If the individual succeeds at the hearing, an IJ will "consider the question of bond." <u>Joseph</u>, 22 I. & N. Dec. at 806.  The IJ can then order release on bond if the alien has "demonstrate[d] to the satisfaction of the Immigration Judge that his release would not pose a danger to property or persons, and that the respondent is likely to appear for any future proceeding." <u>Matter of Salas Pena</u>, 29 I. & N. Dec. 173, 174 (B.I.A. 2025).

<u>Mahdawi</u>, 2026 WL 2090981, at *11.  This Court has already determined that petitioner's "mandatory [*i.e.*, bondless] detention" is "not proper," <u>id.</u> (quoting <u>Demore</u>, 538 U.S. at 514), because it has become unreasonably prolonged.  <u>See</u> *supra*.  Thus, the only question for the

6

immigration judge is whether petitioner is a flight risk or danger to the community, *i.e.*, the typical considerations at a bond hearing.  Accordingly, petitioner is entitled to a "burden-shifted bond hearing . . . at which the Government bears the burden of showing, by clear and convincing evidence, that he is either a danger to the community or a flight risk."  Mathieu, 2026 WL 1747084, at *3; see also Velasco Lopez, 978 F.3d at 855-57.

## CONCLUSION

The petition is granted.  Respondents must promptly provide petitioner with a bond hearing, at which respondents bear the burden of showing, by clear and convincing evidence, that petitioner poses a danger to the community or a flight risk.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated:  Brooklyn, New York
      July 24, 2026

7